1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  JOHNNY GRIFFIN,                        ) Case No.: 1:17-cv-0384 - JLT
                                           )
12           Plaintiff,                    ) ORDER ON MOTIONS IN LIMINE
                                           )
13      v.                                 ) (Docs. 35, 36, 37, 38, 39, 40, 41 and 43)
                                           )
14  UNION PACIFIC RAILROAD COMPANY,        )
                                           )
15           Defendant.                    )
                                           )
16  _____ )

17           Johnny Griffin is a former employee of Union Pacific Railroad Company.  In March 2014, he

18  was riding on a personnel carrier when it was struck by a spiker machine driven by a Union Pacific

19  employee who failed to stop for a red signal.  Plaintiff asserts he suffered injuries including pelvic

20  strain, lumbar strain, cervical strain, and cervical radiculopathy.  (See Doc. 28 at 18) He seeks to hold

21  Union Pacific liable under the Federal Employers Liability Act for these injuries.  Defendant denies

22  the extent of Plaintiff's injuries and asserts Plaintiff stopped working for reasons unrelated to this

23  accident.  (Id.)  The parties have filed motions in limine.

24  **I.      Legal Standards Governing Motions in Limine**

25           "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

26  practice has developed pursuant to the district court's inherent authority to manage the course of

27  trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in

28  limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present

                                            1

potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).

Importantly, courts disfavor motions in limine seeking to exclude broad categories of evidence. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Jonasson, 115 F. 3d at 440.

Moreover, the rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue outside the presence of the jury. Finally, the rulings made here are binding on all parties and not merely to the moving party.

## II.     Defendant's Motion in Limine No. 1 (Doc. 35)

Defendant requests that the Court exclude any testimony from Christy Porter and Michael Moorehead. (Doc. 35) According to Defendant, "Plaintiff did not disclose either potential witness to UPRR pursuant to the requirements of Federal Rule of Civil Procedure 26." (Id. at 2)

### A.     Disclosure and Duty to Supplement

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, "a party must, without awaiting a discovery request, provide to the other parties… the name and, if known, the address and telephone

number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed.R.Civ.P. 26(a)(1). In addition, a party is required to supplement or correct these initial disclosures in a timely manner if the party learns that its response is incomplete and if the additional information has not otherwise been made known to the other party during the discovery process. Fed.R.Civ.P. 26(e)(1).

A party is prohibited from using at trial information or witnesses not disclosed during the discovery period unless the failure to supplement was substantially justified or harmless. Fed.R.Civ.P. 37(c)(1); R & R Sails, Inc. v. Ins. Co. of the State of Pennsylvania, 673 F.3d 1240, 1246 (9th Cir.2012) (the party facing the preclusion of evidence under Rule 37 "bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless"). Rule 37(c) "gives teeth" to the requirements of Rule 26(e) "by forbidding the use on a motion or at trial of any information required to be disclosed by" that rule, unless the party's failure to disclose the required information is substantially justified or harmless. See Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001).

**B.      Testimony from Christy Porter**

Defendant contends that Plaintiff "failed to adequately disclose Christy Porter" as a witness in this action. (Doc. 35 at 2) According to Defendant, Ms. Porter was not identified in the initial disclosure, and Plaintiff "made no Rule 26(e) supplemental disclosures." (Id.) According to Defendant, "Plaintiff did not at any time disclose to UPRR Ms. Porter's name, telephone number, address, nor the topics of information on which she might be knowledgeable, nor was it indicated during discovery that Ms. Porter had any personal knowledge as to which she might testify in this case." (Id. at 3)

On the other hand, Plaintiff argues that he satisfied the duty to disclose Ms. Porter as a potential witness in September 2017. (Doc. 45 at 3) In support of this assertion, Plaintiff produced a copy of his Amended Disclosure and a cover letter dated September 27, 2017, which indicated in relevant part: "The identify of plaintiff's witness number two was listed in error as Patricia Griffin by plaintiff's previous counsel. As you know, Patricia Griffin passed away in November 2015. Therefore, the witness that was meant to be disclosed was plaintiff's daughter, Christy Porter." (Id. at 19) The

3

Amended Disclosure included an address for Ms. Porter, and indicated she "may testify as to the effects of the injuries on plaintiff." (Id. at 21)

At the hearing, the defense withdrew the motion, so it is disregarded.

**C.     Testimony from Michael Moorehead**

Defendant asserts that "Plaintiff has failed to adequately disclose…. Michael Moorehead" as a witness in this action. (Doc. 35 at 2) Defendant contends while Michael Moorehead was mentioned by Plaintiff during his deposition, the "mention still falls short of an adequate disclosure," particularly because the name referred to by Plaintiff in his deposition was "Michael Moore not Moorehead." (Id. at 3) Further, Defendant observes that Plaintiff made "no disclosure of any contact information or—more importantly—any indication that this individual had personal knowledge regarding the case on which he might testify." (Id.)

Plaintiff argues Michael Moorehead should not be excluded as a witness because "[m]ultiple times throughout the discovery process, Defendant was made aware of this witness and the information to which he would testify if called as a witness." (Doc. 45 at 4) According to Plaintiff:

> First, as part of their own initial disclosure to Plaintiff, Defendant disclosed a transcript of the recorded interview between Defendant's Senior Risk Management Specialist, an employee of the Defendant, and the Plaintiff, that took place June 13, 2016. At the end of the interview, the Defendant employee asked Plaintiff if he carpooled to and from the job site. Plaintiff said yes, and identified "Michael Moore" as the co-worker he carpooled with. [Citation.] The misnaming of Moorehead is a minor error that could have been clarified during the interview or subsequent deposition.
>
> At the Plaintiff's deposition in January 2018, the Plaintiff referred to this witness seven times as the same co-worker who he carpooled with and shared a motel room with at the time of the incident. See Deposition of Johnny Griffin, attached as Exhibit C to Declaration of Daniel Turek, at 105:22-106:8; 106:17-107: 16; 108: 12-15; 138:8-25, filed herewith. Here, Defendant inquired into Plaintiff's relation with the witness and the witness' involvement in the incident at issue. It is clear based on the testimony and the fact that this case is not one of many few issues, that this witness would be called on to recount his interactions with the Plaintiff in the days before and after the incident.

(Id. at 4-5) Plaintiff asserts that based upon his deposition testimony "and the fact that this case is not one of many few issues," it was "clear… that this witness would be called on to recount his interactions with the Plaintiff in the days before and after the incident." (Id.)

Further, Plaintiff appears to argue that any failure to disclose the information required by Rule 26 was harmless because "Defendant is in a unique position of awareness - they are the current or

former employer of the percipient witnesses." (Doc. 45 at 4) As a result, Plaintiff argues Defendant had "the information and the access to identify witnesses." (Id.) Plaintiff concludes that "Defendant will suffer no unfair prejudice as a result, given the limited nature of issues in this case and the absence of any bad faith or deliberate attempt to gain strategic advantage from non-disclosure on behalf of Plaintiff." (Id. at 5)

Notably, Plaintiff acknowledges that during discovery, Michael Moorehead was erroneously identified as Michael Moore. Plaintiff fails to explain why Mr. Moorehead was not identified as a witness in either an initial or supplemented Rule 26 disclosure. On the other hand, there was sufficient information provided for the defendant to identify Mr. Moorehead and the topics upon which he had information, likewise, was made clear at the deposition. Even still, Plaintiff failed to explain why he did not disclose the topic(s) of his expected testimony in a manner that complies with Rule 26.

To determine whether to preclude the introduction of evidence under Rule 37, the Court considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F.Supp.2d 719, 733 (N.D. Cal. 2011) (quoting Dey. L.P. v. Ivax Pharms., Inc., 233 F.R.D. 567, 571 (C.D. Cal. 2005)). Based upon the information provided by Mr. Griffin during discovery and before, the Court does not find there was any surprise created by mistakenly calling him "Moore" rather than Moorehead. Likewise, the topics on which this witness would testify seems apparent. The Court finds this testimony would not disrupt trial and that it is not very important, given that others, including Ms. Porter, observed Mr. Griffin soon after the injury as well. Therefore, Defendant's motion to exclude the testimony of Michael Moorehead is **DENIED**. However, the plaintiff's counsel is to provide contact information to the defense by December 13, 2018.

**II.     Defendant's Motion in Limine No. 2 (Doc. 36)**

Union Pacific seeks to preclude Plaintiff from introducing evidence showing other "employees involved in the accident lodged personal injury claims and that some received settlements of their claims" pursuant to Rules 401, 402, and 408 of the Federal Rules of Evidence. (Doc. 36 at 2)

Defendant argues, "any mention of the settlements between [Union Pacific] and any other employees in connection with the subject accident should be inadmissible to prove the validity or extent of Plaintiff's damages." (Id. at 3)  Plaintiff does not oppose the motion. (Doc. 45 at 5)

Accordingly, Defendant's motion in limine to exclude evidence of other personal injury claims and settlements is **GRANTED**.

## III.     Defendant's Motion in Limine No. 3 (Doc. 37)

Defendant seeks to exclude testimony by Plaintiff stating other employees were injured in the same accident as Plaintiff and were afraid to report it to Union Pacific.  (Doc. 37 at 1-2)  Defendant argues such testimony is hearsay and should not be admitted.  (See id. at 1-3)

### A.     Hearsay

Hearsay statements are those "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  The plaintiff's statements repeating what others told him, are hearsay.  On the other hand, a statement offered against an opposing party that "was made by the party's agent or employee within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D).

### B.     Analysis

Defendant observes that during Plaintiff's deposition, "he testified that another UPRR employee who was on the personnel carrier at the time of the accident had stated that he was injured during the accident but was afraid to report it."  (Id. at 2) Specifically, Plaintiff testified:

A: Well, one of the gentlemen, he said he was hurt, but he was scared to report it.

Q: Okay, did he ultimately report it?

A: No.

Q: Okay. Who was that?

A: Ryan Warth.

Q: And how was he hurt?

A: I didn't ask him.

Q: When did –

6

A: He just told me he was hurt.

Q: When did you talk to him?

A: About three or four days after the injury.

Q: Was there anybody else that was hurt?

A: Not that I know of. They didn't say anything

(Doc. 37 at 2, quoting Griffin Depo. 95:5-19) According to Defendant, "Plaintiff's testimony that his colleague stated that he was injured is hearsay and should be excluded." (Id. at 3)

Plaintiff incontrovertibly seeks to introduce the evidence for the truth of the matter asserted: that Ryan Warth was also injured, but was afraid to report the injury to Union Pacific. According to Plaintiff, his testimony is not hearsay because "it was an opposing party's statement, for the purposes of Fed. R. Evid. 801(d)(2)(D)." (Doc. 45 at 7) He asserts that he "would offer the testimony at issue against the Defendant, an opposing party." (Id. at 6) Plaintiff argues, "It is clear that Warth made the statement [to Plaintiff] during his employment, as the statement was made at most four days following the incident and would lose any sense and effect had Warth not been an employee of Defendant." (Id.)

Significantly, the exclusion of Rule 801(d)(2)(D) "does not apply when the agent/employee and the party opponent have conflicting litigation positions." Elia v. Roberts, 2017 WL 4844296 at *4 (E.D. Cal. Oct. 25, 2017) (citing United States v. King, 134 F.3d 1173, 1176 (2nd Cir. 1998)). In Elia, the Court explained that where an agent and employee have opposing interests from their employer— thereby placing them in an adversarial relationship— "the justification for Rule 801(d)(2)(D) does not exist." Id., (quoting Young v. James Green Mgmt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003)) Because Ryan Warth was not speaking on behalf of Union Pacific and his interests related to the accident were adversarial to those of his employer, the Court finds the hearsay exclusion in Rule 801(d) does not apply. Thus, Defendant's motion to exclude Plaintiff's testimony regarding the statements made by other employees, including Ryan Warth, is **GRANTED**.

## V.    Defendant's Motion in Limine No. 4 (Doc. 38)

Defendant has admitted negligence for "for the occurrence of the accident on March 28, 2014." (Doc. 38 at 2, quoting Doc. 33 at 9) Defendant asserts, "The purpose of this stipulation was to narrow the issues to be decided at trial to issues regarding the cause, nature, and extent of the injuries claimed

by Plaintiff." (Id.) According to Defendant, as a result of this stipulation, "a great deal of evidence about the cause of the accident [is] no longer of central importance to the Court's inquiry." (Id.) Defendant acknowledges some evidence may remain relevant, but asserts the following should be excluded from evidence pursuant to Federal Rule of Evidence 403: (1) "Report of Inspection of Railcar, Equipment, and Appliances"; (2) Union Pacific's Safety Rules and General Code of Operating Rules; and (3) testimony from William Gene Smartwood regarding the minimum operating distance for on-track vehicles. (Id. at 2-4)

### A. Relevance and the Probative Value of Evidence

Under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### B. The "Report of Inspection"

Defendant contends the "Report of Inspection of Railcar, Equipment, and Appliances" has "minimal probative value due to UPRR's stipulation on the issue of negligence." (Doc. 38 at 2-3) Defendant observes that the Report "describes the result of an inspection for any defects that could have contributed to the cause of the accident." (Id. at 3) Union Pacific argues:

> This inspection and the record of its findings have no probative value as to Plaintiff's damages and the presentation of it is likely only to confuse the issues and waste time by directing the jury's attention away from salient matters and toward the suggestion or implication that UPRR's equipment may have been faulty or that UPRR was negligent with regard to its equipment, neither of which is true nor at issue, but which could be used to paint UPRR in a negative light.

(Id.) Further, Defendant believes the Report "does not directly relate to the Defendant's injuries or damages in any material way," and as a result admission of the evidence "would needlessly take up the Court's precious trial time." (Id.)

Plaintiff argues the evidence should be admitted because he still has "the burden to prove

causation and damages" in the action. (Doc. 45 at 7-8)  He asserts "the defect descriptions" in the Report "are probative of the force of the impact, and therefore causation and extent of Plaintiff's injuries." (Id. at 7)  Plaintiff observes: "For example, the fact that the tow bar (on the part of the man carrier where impact occurred) was bent is probative of the significant force with which the man carrier was impacted at the time of collision and, therefore, of causation of Plaintiff's injuries."  (Id. at 7-8)  He asserts the information in the Report will "help inform the jury of the full picture as to what really happened that day, without inappropriately going above the limits imposed by Defendant's negligence admission." (Id. at 8)

Notably, as Plaintiff observes, to succeed upon his claim under the Federal Employers Liability Act, he has the burden "to prove both negligence *and* causation." Armstrong v. Burlington N. R.R., 138 F.3d 1277, 1279 (9th Cir. 1998) (emphasis added, citing Mullahon v. Union Pac. R.R., 64 F.3d 1358, 1363 (9th Cir. 1995)).  Indeed, the defendant takes the position that the injuries the plaintiff claims were not caused by the incident.  Thus, Union Pacific's stipulation to negligence does not eliminate Plaintiff's burden to establish the accident caused his injuries.  Because the Report contains information that could explain the mechanism of injury (see Doc. 38-1 at 6), it will assist the jury in determining these issues. However, the Plaintiff **SHALL NOT** be permitted to offer evidence about any negligence in the care of the equipment, that the equipment was faulty or any evidence that the defendant caused the collision beyond that stipulated.  Thus, unless the defense agrees otherwise, the report **SHALL** be redacted to reveal only the parts of the equipment damaged in the incident.  Accordingly, Defendant's motion in limine for the exclusion of the "Report of Inspection of Railcar, Equipment and Appliances" is **GRANTED IN PART AND DENIED IN PART**.

### C.    Safety Rules and General Code of Operating Rules

Union Pacific asserts that its Rules and General Code identify the standards "for safe conduct and operation while on the job." (Doc. 38 at 3)  According to Defendant, "While these rules would be highly relevant to the issue of negligence, they do not inform the finder of fact about the nature or extent of Defendant's injuries whatsoever."  (Id.)  Union Pacific argues admission of this evidence "would only have the effect of directing the jury's attention to the issue of negligence, which would unfairly paint UPRR in a negative light and mislead the jury as to the issues at hand." (Id.)  Defendant

maintain this evidence would also "only … waste the limited trial time allotted to this case." (Id.)

Plaintiff opposes the exclusion of the rules, arguing they "are relevant not just to negligence, but also to causation and the extent of damages suffered by Plaintiff." (Doc. 45 at 8, emphasis omitted) Plaintiff observes, "Defendant is alleging that Plaintiff failed to mitigate his damages," and one of the safety rules indicates Union Pacific has the "responsibility to care for the injured." (Id.) Thus, Plaintiff argues the rules "cut[] against Defendant's position that Plaintiff failed to mitigate his damages." (Id.) The defense read the language of the Rule at the hearing. The Court is not convinced that this section is relevant to the issues. Thus, the Court **RESERVES** ruling as to this section until the plaintiff demonstrates how it bears on the questions presented. However, as to the rest of the Rules, the motion is **GRANTED.**

### D. Testimony from William Smartwood

In the Joint Pretrial Statement, Plaintiff indicated "he will present portions of the deposition testimony of William Gene Smartwood." (Doc. 38 at 3, citing Doc. 28 at 15) Defendant observes that Mr. Smartwood testified regarding Union Pacific's "minimum operating distance for on-track vehicles," which Defendant argues "is not probative of any fact relating to Plaintiff's injuries and damages and is only relevant to UPRR's negligence." (Id. at 3-4) Defendant argues the testimony will "draw the jury's attention away from the extent and nature of Plaintiff's damages." (Id. at 4) Defendant also contends "its presentation at trial can only mislead the jury, confuse the issues at hand, and waste the limited trial time allotted to this case." (Id.) Therefore, Defendant argues the evidence should be excluded pursuant to Rule 403. (Id.)

Plaintiff acknowledges the testimony from Mr. Smartwood regarding the minimum operating distance "is relevant to negligence alone" and indicates he "does not oppose the exclusion of the [identified] testimony." (Doc. 45 at 8) Because the evidence is no longer relevant to the issues to be decided by the jury, Defendant's motion in limine to exclude Mr. Smartwood's testimony regarding the minimum operating distance for on-track vehicles is **GRANTED**.

### VI. Defendant's Motion in Limine No. 5 (Doc. 39)

Union Pacific seeks the exclusion of "any testimony, evidence, discussion, or argument that Plaintiff was furloughed, laid off, or rendered unneeded … as a result of his injuries" pursuant to Rules

26(a) and (e) of the Federal Rules of Civil Procedure Federal Rule of Civil Procedure." (Doc. 39 at 2)

## A. Disclosure of Damages

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, a party is required to provide "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). In addition, the disclosing party is required to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." (Id.) Rule 26(e) requires a party to supplement the initial disclosures—including those related to damages— when information is incomplete or incorrect. See Fed. R. Civ. P. 26(e).

## B. Analysis

Defendant contends that Plaintiff first revealed an allegation that he was no longer employed by Union Pacific "as a result of his injuries" at the settlement conference held September 17, 2018. (Doc. 39 at 2) Defendant asserts this claim was made "long after the close of discovery and too late in the case for [Union Pacific] to have properly prepared a defense to rebut such a claim." (Id.) Further, Defendant asserts, "Plaintiff did not supplement his Rule 26 disclosure to include future lost wages resulting from his injury at any point." (Id.) Defendant also argues "there is no basis for the notion that Plaintiff has been furloughed or laid off *because of* his injury." (Id. at 4, emphasis added) According to Defendant, if Union Pacific "had notice of Plaintiff's claim that he would lose future income as a result of the incident, Defendant would have disclosed additional witnesses as well as a vocational rehabilitation expert to defend against Plaintiff's claim." (Id. at 3) Nevertheless, Defendant indicates it "produced documentation to Plaintiff and is prepared to present testimony at trial establishing that Plaintiff remains eligible to return to work and Plaintiff retains seniority that would allow him to resume working as soon as he bids a job that he is qualified to perform…" (Id. at 4)

In response, Plaintiff argues the "characterization by Defendant is misplaced," and the evidence Defendant seeks to exclude "is independently relevant, and therefore admissible, through Defendants (sic) allegation that Plaintiff has failed to mitigate his damages." (Doc. 45 at 9) Plaintiff asserts he did not disclose future wages as damages because he "has not and is not claiming future wage loss." (Id.) He notes that he "stipulated that he is physically able to work," and only seeks to admit evidence of his

efforts to find work to mitigate his damages.  (Id.)  Plaintiff argues that "[i]t would be unfair to allow Defendant to tell the jury that Plaintiff has failed to mitigate his damages without giving Plaintiff the opportunity to explain his efforts to mitigate."  (Id.)  According to Plaintiff, "Any evidence that is probative of his efforts, or failure, to mitigate goes to weight, not admissibility, and should be allowed to permit the jury to determine whether Plaintiff failed to mitigate his damages."  (Id. at 9-10)

Notably, it appears Defendant will present evidence that Plaintiff failed to mitigate damages related to his injury.  (See Doc. 44 at 2)  To the extent that Union Pacific raises this claim as part of the defense, any evidence that Plaintiff has attempted to mitigate his damages—including that he was willing and able to work but was "furloughed, laid off, or rendered unneeded" by Union Pacific—is relevant to the defense.  On the other hand, Plaintiff did not raise any retaliation claim in his complaint by asserting that he was laid off for reporting his injuries, or claim that his "injuries are what keep him from working."  Indeed, as Plaintiff asserts, he has stipulated that he is able to work.  Thus, such claims will not be permitted at trial.

Accordingly, Defendants' motion in limine is **GRANTED** to the extent that there will be no evidence presented that Plaintiff was laid off *in retaliation for* reporting his injuries.  As to the question of mitigation as a whole, the Court **RESERVES** the issue and will require further briefing.  The parties **SHALL** submit further briefing on whether there is evidence the plaintiff was precluded from working by the defendant *due* to his injuries.  The plaintiff **SHALL** submit his brief on this topic by January 4, 2019 and the defense **SHALL** respond by January 8, 2019.

## VII. Defendant's Motion in Limine No. 6 (Doc. 40)

Defendant "anticipates that Plaintiff will attempt to introduce evidence to the effect that he repeatedly asked to be put back on his job but was denied and replaced by younger employees."  (Doc. 40 at 2)  Defendant asserts such evidence should also be excluded because this allegation "was first revealed during a phone conference with Plaintiff's counsel as part of the meet and confer prior to submitting the parties' joint pretrial statement."  (Id.)

Plaintiff asserts that he "faced difficulty in obtaining work opportunities that are reasonable for him, including having repeated phone calls unreturned by his manager and learning from colleagues that his manager doesn't return Plaintiff's calls intentionally and instead hired on other, younger

employees." (Doc. 45 at 11) He again asserts that he should be permitted to present evidence of his "efforts to mitigate his damages," and argues "[a]ny evidence that is probative of his efforts, or failure, to mitigate goes to weight, not admissibility." (Id.)

Significantly, as Plaintiff acknowledges, this action does not include a claim for age discrimination. (See Doc. 45 at 11) Evidence that younger employees have replaced Plaintiff at Union Pacific is not relevant to any claim brought by Plaintiff, or any defense. However, evidence Plaintiff asked for his job back and Plaintiff's calls were unreturned by his manager clearly may be "of consequence in determining" whether Plaintiff mitigated his damages. See Fed. R. Evid. 401.

Accordingly, Defendants' motion in limine is **GRANTED** to the extent that there will be no evidence presented that younger workers received jobs in Plaintiff's stead[1]. As to the question of mitigation as a whole, the Court **RESERVES** the issue and will require further briefing. The parties **SHALL** submit further briefing on whether there is evidence the plaintiff was precluded from working by the defendant *due* to his injuries. The plaintiff **SHALL** submit his brief on this topic by January 4, 2019 and the defense **SHALL** respond by January 8, 2019.

## VIII.  Defendant's Motion in Limine No. 7 (Doc. 41)

Plaintiff retained Dr. Michael Price as an expert in this action, and produced his report on February 12, 2018. (See Doc. 41 at 2-3; Doc. 45 at 12) Plaintiff produced a supplemental report from Dr. Price on March 15, 2018. (See id.) In addition, Defendant received reports from Dr. Price during his deposition on March 29, 2018, addressing his findings from evaluations of Plaintiff in February and March. (Doc. 41 at 4) Union Pacific seeks to exclude any opinions of Dr. Price received after February 12, 2018, "on the grounds that Plaintiff has failed to comply with the Court's modified scheduling order and with Rule 26(a)(2) of the Federal Rules of Civil Procedure," which requires the disclosure "of all opinions, conclusions, and data" upon which Dr. Price relied. (Doc. 41 at 1) Plaintiff opposes the motion, arguing the supplemental report only added information previously unavailable to Dr. Price, and the failure "to timely disclose was both substantially justified and harmless." (Doc. 45 at 12-13, emphasis omitted)

---

[1] Not only is the evidence not relevant to the claims, but it also appears the only evidence in support of this assertion would be inadmissible as hearsay.

13

### A.     Expert Witnesses and Reports

The disclosure of expert witnesses is governed by Rule 26(a) of the Federal Rules of Procedure.  Parties must disclose the identity of each expert who will testify at trial.  Fed.R.Civ.P. 26(a)(2)(A).  When a witness is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," disclosure must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).

A party failing to satisfy expert disclosure requirements "is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).  Rule 37(c)(1) is limited to a party's failure "to provide information or identify a witness as required by Rule 26(a) or 26(e)." <u>See id</u>. The exclusion sanction is "self-executing" and "automatic" to "provide[] a strong inducement for disclosure of material." <u>Yeti by Molly</u>, 259 F.3d at 1106 (quoting Fed.R.Civ.P. 37 Advisory Committee's note (1993)).

### B.     Analysis

Disclosures of retained experts and the accompanying reports must be made at the time and in the sequence ordered by the Court.  Fed. R. Civ. P. 26(a)(2)(D).  The Court entered its Scheduling Order in this action on May 16, 2017.  (Doc. 11)  The Court instructed the parties "to disclose all expert witnesses, in writing, on or before February 2, 2018."  (<u>Id</u>. at 3, emphasis omitted).  The parties were ordered to make the written designation of experts "pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A), (B), and (C) and … include all information required thereunder."  (<u>Id</u>., emphasis omitted)  In addition, the Court ordered: "In the event an expert will offer opinions related to an independent medical or mental health evaluation, the examination SHALL occur sufficiently in advance of the disclosure deadline so the expert's report fully details the expert's opinions in this regard."  (<u>Id</u>. at 3, n.1)  The parties

stipulated to the continuation of the expert disclosure deadline to February 12, 2018, which was approved by the Court. (Docs. 18, 19)

On February 12, 2018—the date of the deadline—Plaintiff designated Dr. Price as a retained expert and produced his report. (See Doc. 41-1 at 16-21) Dr. Price opined Plaintiff sustained the following injuries:

> A. Cervical strain;
> B. Lumbar Strain;
> C. Right Shoulder subacromial bursitis and impingement with internal derangement;
> D. Pelvic Strain; and
> E. Cervical radiculopathy

(Id. at 19) He indicated that information considered in formulating these opinions included discovery produced by Defendant; his own evaluation of Plaintiff on February 2, 2018; deposition transcripts; and medical records of Plaintiff. (Id. at 17) Dr. Price opined MRIs of the cervical spine, lumbar spine, right shoulder, and pelvis were "reasonable and necessary" treatments. (Id. at 21) In addition, Dr. Price noted that upon receiving and reviewing these MRIs, he would "supplement []his report with any additional opinions should they be necessary." (Id. at 20)

On March 15, 2018, Plaintiff produced a supplemental report from Dr. Price. (Doc. 41 at 3; see also Doc. 41-1 at 25-31) Dr. Price indicated Plaintiff had MRIs taken on February 25 and 27, 2018, and stated:

> After receiving and reviewing the MRI results of the pelvis, lumbar spine, right shoulder, and cervical spine, I offer the following supplemental opinions:
>
> 1. As a result of the incident, it is my opinion that Mr. Griffin has sustained the following injuries:
> > A. Cervical strain
> > B. Lumbar strain
> > C. Right shoulder subacromial bursitis and impingement with internal derangement;
> > D. Pelvic strain
> > E. Cervical spine multilevel disk herniations with stenosis.
> > F. Lumbar spine multilevel disk herniations with stenosis.
> > G. Pelvic bilateral labral tears with degenerative joint disease.
> > H. Right shoulder partial rotator cuff tear.
>
> 2. As a result of the incident and injuries described above and in my previous report, Mr. Griffin will require the following procedures:
> > A. Cervical spine epidural versus medial branch block injection with an anticipated cost of $14,000, to include the procedure and facility fees.
> > B. Lumbar spine epidural versus medial branch block injection with an anticipated cost of $14,000, to include the procedure and facility fees.

C. Right shoulder PRP injection with an anticipated cost of $5,000, to include the procedure and facility fees.
D. Bilateral hip PRP injections intraarticularly with an anticipated cost of $5,000, to include the procedure and facility fees.

(Doc. 41-1 at 30-31)  Dr. Price was deposed by Defendant two weeks after Plaintiff produced the supplemental report.  (See Doc. 41 at 4)  Defendant asserts that during the deposition, Union Pacific received for the first time the "Comprehensive Orthopedic Evaluations" dated February 2 and March 2, 2018.  (Id.)  On April 5, 2018, Defendant requested the MRIs reviewed by Dr. Price and referred to in his supplemental report.  (Id.)  However, they were not received before Defendant's medical expert testified on April 6, 2018.  (Id.)  Union Pacific now seeks to limit the testimony of Dr. Price "to those opinions that were timely disclosed in his February 12, 2018 report" (Doc. 41 at 8)—and thus seeks the exclusion of the supplemental report dated March 15, 2018; the Comprehensive Orthopedic Evaluations; and to prevent Dr. Price from testifying regarding the MRI results.

### 1. The Comprehensive Orthopedic Evaluations

As an initial matter, the Court notes that Defendant asserts the Comprehensive Orthopedic Evaluations were "two additional reports authored by Dr. Price," and appears to argue the evaluations should be excluded from evidence.  (Doc. 41 at 4)  The Comprehensive Orthopedic Evaluations include specific findings where Plaintiff exhibited tenderness, his range of motion, and strength testing.  (See Doc. 41-1 at 42-43, 44-45)  Notably, these documents appear to be evaluation notes, rather than containing the complete expert opinions of Dr. Price.  Indeed, Dr. Price indicated in the initial and supplemental reports that his opinions were based, in part, upon the evaluation that occurred February 2, 2018.  (See Doc. 41-1 at 17, 29)  There is no showing the "Comprehensive Orthopedic Evaluations" were intended to be "reports" within the meaning of Rule 26, or that Plaintiff erred by not providing these documents to Defendant prior to the deposition of Dr. Price.

### 2. Initial Report

It is well-established that expert reports lacking an adequate foundation fail to support may not be considered by the Court.  See Fed. R. Civ. P. 37(c)(1) (precluding a party from relying on report if it fails to include the expert's opinions *and* the basis for those opinions); Sitrick v. Dreamworks, LLC, 516 F.3d 993 (Fed. Cir. 2008) (explaining "[c]onclusory expert assertions cannot raise triable issues of

material fact on summary judgment").  An expert report "must include 'how' and 'why' the expert reached a particular result, the merely the expert's conclusory opinions . . . [because] an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the judicial process." Finwall v. City of Chicago, 239 F.R.D. 494, 501 (N.D. Ill. 2006).

Defendant notes that Dr. Price's "findings on physical examination… were not included" in the initial report dated February 12, 2018.  (Doc. 41 at 4, emphasis omitted)  To the extent that Defendant contends the initial report failed to include required information, the Court overrules this objection.  Dr. Price indicated that he formed his opinion based upon his personal evaluation and reviewing discovery materials, deposition transcripts, and specific medical records—and thereby carried the burden to identify the "data considered" when forming his opinions.  See Fed.R.Civ.P. 26(a)(2)(B).

### 3. Supplemental Report

It is indisputable that the report dated March 15, 2018 was untimely as it was produced by Plaintiff after the expert disclosure deadline approved by the Court.  (See Docs. 18, 19)  Thus, Plaintiff must demonstrate his failure to comply with Rule 26 was substantially justified or harmless.  See Yeti by Molly, 259 F.3d at 1107.

Plaintiff contends he was substantially justified in producing the untimely supplemental report because Dr. Price determined the MRIs were necessary in the initial report, and "the supplemental report only added information" learned from the MRIs.  (Doc. 45 at 11-12, emphasis omitted)  Plaintiff fails to explain why his evaluation by Dr. Price was performed so near to the deadline, without sufficient time for any imaging to be taken or reviewed by his expert.  Notably, when scheduling the action, the Court specifically directed the parties to have any examinations "occur sufficiently in advance of the disclosure deadline so the expert's report fully details the expert's opinions."  (Doc. 11 at 3, n.1)  Despite this, the evaluation by Dr. Price did not occur until ten days prior to the expert disclosure deadline stipulated by the parties.

On the other hand, as Plaintiff observes, Union Pacific received the report of Dr. Price two weeks prior to his deposition.  (See Doc. 41 at 12)  Thus, Defendant had the opportunity to question Dr. Price regarding any differences between the initial and supplemental report—including his

17

opinions on Plaintiff's physical impairments from the MRI results, the recommended treatment, and the projected costs. Thus, it appears the untimeliness of the Supplemental Report was harmless.

### 4. MRIs

Defendant observes that it requested the MRIs that Dr. Price relied upon on April 5, 2018, and the images were received after its medical expert was deposed on April 6, 2018. To the extent that Defendant suffered any prejudice, it may be cured by allowing Defendant's expert to offer testimony on the MRI results. Also, the defendant may take a second deposition of Dr. Price at its expense. The deposition is limited to the MRI films **only**.

### C. Conclusion

Based on the foregoing, Defendant's motion to limit the testimony of Dr. Price to only the opinions included in his initial report dated February 12, 2018 is **DENIED**. On the other hand, the defendant's expert may offer additional opinions that address the MRIs and the supplemental report of Dr. Price to the extent he was precluded from doing so at the time of his deposition.[2]

## IX. Plaintiff's Motion in Limine No. 1 (Doc. 43 at 3)

After the collision in March 2014, Plaintiff broke his ankle. (See Doc. 43 at 3; Doc. 44 at 2) Plaintiff seeks to exclude evidence related to his subsequent ankle injury suffered in December 2014, arguing it "is unrelated to the injuries for which [he] is seeking reimbursement in this case, and [is] therefore irrelevant." (Doc. 43 at 3)

### A. Relevance

As noted above, evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This rule "contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D. N.M. 2012) (quoting Fed. R. Evid. 401 Advisory Committee's note). When the probative value of relevant evidence is substantially outweighed by the potential of unfair prejudice to a

---

[2] The Court regrets that this issue was not brought to its attention when it was occurring and when the Court could have taken timely intervention.

party, confusion of the issues, or misleading the jury, the Court may exclude such evidence. See Fed. R. Evid. 403.

**B.     Analysis**

Plaintiff contends, "In the present case, [he] is making no claim for injuries relating to his ankle." (Doc. 43 at 3)  Instead, Plaintiff asserts he "is claiming injuries to his upper body, alone." (Id.) He argues that allowing the jury to hear evidence regarding his broken ankle "creates a very real danger that the plaintiff will be prejudiced, since the evidence will create a perception that the plaintiff seeks to recover more than he is entitled to by law." (Id. at 4)  Thus, Plaintiff asserts the Court should "exclude any testimony or documentary evidence, or mention of any evidence, regarding plaintiff's subsequent ankle fracture." (Id.)

In response, Defendant argues that evidence related to Plaintiff's subsequent ankle injury should be admitted because it "is relevant to his damages and there appears to be no actual risk that the jury would be confused by hearing that Plaintiff's ankle was injured in a subsequent accident." (Doc. 44 at 2)  Defendant asserts evidence related to the injury "tends to prove facts of consequence to Plaintiff's damages and mitigation of damages." (Id.)

According to Defendant, "[i]f Plaintiff's ankle injury was a factor in the timing of Plaintiff's decision and/or ability to return to work after the subject accident, or if his ankle injury caused him to no longer be able to perform certain work or household tasks, then Plaintiff's injury would in fact be highly probative as to facts bearing on the damages at issue in this case…" (Doc. 44 at 2)  Further, Defendant argues that "[t]here is no real risk of confusion from allowing the jury to consider that Plaintiff's ankle injury may have affected [his] ability and willingness to work and the injury's effect on Plaintiff's ability to partake in household tasks." (Id. at 3)  Therefore, Defendant argues the evidence should not be excluded under Federal Rules of Evidence 402 or 403.  (Id. at 2-3)

Importantly, Plaintiff indicated in his initial disclosures that he seeks "damages for past wage loss, loss of earning capacity, for the cost of vocational rehabilitation expenses and school expenses, for past and future medical expenses and the value of the loss of the ability to perform household services." (Doc. 44-1 at 8)  As Defendant argues, evidence of Plaintiff's subsequent ankle fracture is relevant to the damages sought by Plaintiff—particularly damages for wage loss, loss of earning

19

capacity, and ability to perform household services.  See Badger v. Wal-Mart Stores, Inc., 2013 WL 3297084 at *7 (D. Nev. June 28, 2013) (denying a plaintiff's motion in limine to exclude evidence of subsequent injuries or medical treatment, because "the[] injuries and treatments…bear on the question of causation and damages").  Further, the Court finds such evidence is not likely to cause Plaintiff prejudice or confuse the jury related to the issue of damages.  Accordingly, Plaintiff's motion to exclude evidence related to his subsequent ankle injury is **DENIED**.

## X.      Plaintiff's Motion in Limine No. 2 (Doc. 43 at 4)

Plaintiff anticipates that Union Pacific "will seek to make the argument that because of the plaintiff's physical condition prior to this collision, plaintiff would have sustained the same injuries regardless." (Doc. 43 at 3)  He argues, "Such a position is purely speculative and lacks the necessary foundation for admission."  (Id.)  In response, Union Pacific reports it does seek to present evidence of Plaintiff's preexisting conditions— and argues such evidence should be permitted— but Defendant does not intend to argue he would have suffered the same injuries. (Doc. 44 at 4)

### A.      Preexisting Conditions

As the Ninth Circuit explained, "It is a well-settled principle of tort law that when a defendant's negligence causes an injury to a plaintiff, the defendant is liable for the resulting damage to the plaintiff, even though the plaintiff had a preexisting condition that made him more susceptible to injury or made the consequences to him more severe." Jordan v. Atchison, Topeka & Santa Fe. R. Co., 934 F.2d 225, 228-29 (9th Cir. 1991) (finding this doctrine was applicable to a FELA claim for negligence). Nevertheless, when there is evidence that a plaintiff's preexisting conditions "would inevitably worsen" or "would probably have caused the injury at issue," a jury instruction on apportionment may be appropriate.  See Pope v. S. Pac. Transport Co., 14 Fed. App'x 798, 799 (9th Cir. 2001) (internal quotation marks omitted) (citing Maurer v. United States, 668 F.2d 98, 100 (2d Cir. 1981); Sauer v. Burlington N. R.R. Co., 106 F.3d 1490, 1495 (10th Cir. 1997).

Defendant asserts its "position is that Plaintiff had preexisting conditions prior to the accident which, given Plaintiff's health, were likely to persist and worsen with time and that the jury is entitled to distinguish between the effect of Plaintiff's significant preexisting conditions and the effect of any injuries Plaintiff sustained in the accident."  (Doc. 44 at 4)  Defendant observes that Plaintiff's

previously-existing impairments included "morbid obesity, degenerative joint disease in his neck and back, and generalized arthritis and body aches." (Id. at 5) According to Defendant, "there is sufficient evidence upon which to base a jury instruction that [these impairments]… could be the cause of Plaintiff's alleged post-accident neck and back pains and not the subject accident." (Id.) Defendant points to testimony from Plaintiff's treating physician, Dr. Carlos Alvarez, who testified that Plaintiff's headaches could be attributed to degenerative joint disease. (Id.) Defendant notes that Dr. Alvarez testified "headaches can come from DJD [degenerative joint disease] of the neck" and Plaintiff "had chronic pain syndrome for years even before March 28, 2014." (Id., quoting Alvarez Depo. 10:19-11:3, 18:7-22 [Doc. 44-1 at 24-26]) Notably, Dr. Alvarez also testified that due to "the concussion syndrome" from the collision, Plaintiff "would have … headaches, a little blurred vision, a little unsteadiness that resolves after three or four months." (Doc. 44-1 at 28, Alvarez Depo. 20:2-5)

The preexisting conditions are related to the issue of damages. Because Plaintiff suffered headaches both before and after the collision, there is a question of fact for the jury to determine the extent to which his headaches could be attributed to ongoing degeneration, the collision, or both. See Pope, 14 Fed. App'x at 799; see also Maurer, 668 F.2d at 100 (holding that "a defendant causing a subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury"). Consequently, Plaintiff's motion in limine, to the extent he seeks to exclude all evidence of his preexisting physical condition, is **DENIED**. However, the defendant **SHALL NOT** point to the plaintiff's non-degenerating but contributing physical condition, after the incident as evidence to support that he would have degenerated despite the incident. For example, if he gained weight after the incident and this weight gain contributed to the degeneration, the defendant cannot rely upon this a basis for the claim that he would have inevitability suffered the same disability.

### B. Same Injuries

Defendant asserts it does not intend to argue or present evidence that "Plaintiff would have suffered the exact same set of injuries whether he was involved in the accident or not." (Doc. 44 at 4) The motion in limine to exclude evidence that Plaintiff "would have sustained the same injuries regardless" of the collision is **GRANTED**.

**XI.     Plaintiff's Motion in Limine No. 3 (Doc. 43 at 6)**

Plaintiff notes that Defendant admits it "was negligent for the occurrence of the collision on March 28, 2014." (Doc. 43 at 7) As a result, Plaintiff argues that "[a]ny mention of a safe working environment would only be presented as good character evidence, to discount what they've admitted to, and to improperly generate sympathy from the jury." (Id., citing U.S. v. Hitt, 981 F.2d 422, 423-25 (9th Cir. 1992); Kenney v. Floyd, 700 F.3d 604, 609-10 (1st Cir. 2012))

In response, Defendant contends "it does not plan to present any argument or evidence that [Union Pacific] provides a safe working environment for its workers." (Doc. 44 at 6) Nevertheless, as Plaintiff asserts, such evidence would be improper given Defendant's stipulation to the negligence of its employee. Accordingly, Plaintiff's motion is **GRANTED**, and the parties shall not present any testimony or documentary evidence related to the safety of the working environment.

**XII.     Plaintiff's Motion in Limine No. 4 (Doc. 43 at 8)**

Plaintiff seeks the exclusion of "evidence and argument that other workers were uninjured and/or did not sustain the same kind of injury" in the collision on the carrier. (Doc. 43 at 8, emphasis omitted) He reports, "Of the eight Union Pacific employees involved in the collision, three reported injury." (Id. at 9) Plaintiff "anticipate[s] that defendant will seek to minimize the impact of the collision by distinguishing the injuries of plaintiff from the injuries, or lack thereof, of his coworkers present on the man carrier that day." (Id. at 8) According to Plaintiff:

> Defendant should not be allowed to use their negligence admission as a shield against unfavorable, potentially inflammatory, evidence regarding the conduct of their employees in causing this collision, and then turn around and use the fact that other employees on the man carrier were not injured against the plaintiff. Federal Rule 403 calls for the exclusion of relevant evidence if there is a danger of prejudice that substantially outweighs the probative value of this evidence. If this evidence of non-injury or different injury suffered by coworkers was somehow relevant to causation and damages, there exists a high likelihood that the jury would be mislead to believe what happened to one person had an effect on another.

(Id. at 9)

In response, Defendant acknowledges that "[w]hether other employees were injured or not is not directly relevant to whether Plaintiff was injured or how." (Doc. 44 at 6) Consequently, Union Pacific "does not intend to seek testimony regarding any specific injuries or lack thereof to the other workers." (Id.) However, Defendant contends "the other employees' discussion of and assessment of

the impact—and how they felt it—is probative of consequential facts such as the magnitude of the impact and the speed of the vehicles involved, both before and at the moment of impact." (Id.) Thus, Defendant argues Plaintiff's "motion should be denied to the extent it seeks to exclude evidence as to other workers' discussion of their experience and their assessment of the impact and its severity." (Id.)

Importantly, as both parties recognize, the fact that some individuals were not injured in the collision does not make it "more or less probable" that Plaintiff suffered damages. Thus, the nature and extent of injuries— or the lack of injuries — suffered by individuals in the same collision are not relevant to issues remaining in the action. See Fed. R. Evid. 401. Toward that end, Plaintiff's motion to exclude evidence that other employees were not injured and/or did not sustain the same injury as Plaintiff is **GRANTED**. However, the other employees in the personnel carrier with Plaintiff may testify as to their personal observations of what occurred during the collision.

## XIII.  Plaintiff's Motion in Limine No. 5 (Doc. 43 at 10)

Plaintiff requests that the Court preclude Defendant's "retained expert Sassan Keshavarzi, M.D. from offering expert opinions or testimony concerning any headaches, neck pain, back pain, and numbness and tingling suffered by the plaintiff." (Doc. 43 at 10) According to Plaintiff, the testimony by Dr. Keshavarzi is "speculative and improper," and fails to meet the standards of a reliable opinion. (Id. at 10-11, citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,589 (1993); Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398 (6th Cir. 2006)) Defendant opposes the motion, arguing Plaintiff fails to identify a valid reason for excluding Dr. Keshavarzi's expert testimony. (Doc. 44 at 7-10)

### A.     Expert Testimony

Under the Federal Rules, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Such expert testimony is permissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id. Relying on "the liberal thrust" of the Federal Rules of Evidence, the Supreme Court held in

Daubert that expert testimony need be based only on a reliable and scientifically valid methodology that fits with the facts in issue.  Daubert, 509 U.S. at 592-93.

The Court identified five factors to guide a district court in its assessment of whether expert testimony was reliable and based upon appropriate methodology, including: (1) whether the methodology can be, and has been, tested; (2) the known or potential rate of error of the methodology; (3) whether the technique has been subjected to peer review and publication; (4) whether the technique has been generally accepted in the proper scientific community; and (5) whether there are standards controlling the method's operation.  Daubert, 509 U.S. at 593-94.  Notably, these factors have been incorporated into Rule 702, which was "amended in response to Daubert" and the many cases applying its standards.  See Fed. R. Evid. 702 ("Committee Notes on Rules—2000 Amendment").  However, as the Supreme Court cautioned, the inquiry into the propriety of an expert's testimony is "a flexible one," because the identified factors may not apply to each case.  Daubert, 509 U.S. at 595.

**B.    Analysis**

Dr. Keshavarzi reviewed Plaintiffs "records of various hospitalizations, clinic visits and reports from imaging;" his deposition testimony; and "various miscellaneous documents."  (Doc. 44-1 at 46) He prepared a report on February 12, 2018, in which he summarized the medical record —including subjective statements by Plaintiff and objective findings—and discussed differences he identified between Plaintiff's records before and after the accident.  (See generally id. at 46-51)  Plaintiff argues that the opinions of Dr. Keshavarzi should be excluded because they are speculative and "based solely on the opinions of other non-testifying experts" and are speculative in nature.  (Doc. 43 at 10, emphasis omitted)  Thus, Plaintiff challenges the reliability of Dr. Keshavari's opinions and the methodology used to reach these opinions.

Plaintiff observes, "Dr. Keshavarzi did not examine, take a history of, or view medical imaging of the patient," though these are important factors to Dr. Keshavarzi "considers important and typical when forming an opinion."  (Doc. 43 at 10) Plaintiff contends: "It is plaintiff's position that Dr. Keshavarzi's testimony will not be comprised of independent opinions, but rather will be solely based on what the plaintiff's treaters reported. This is not reliable …and should be excluded."  (Id. at 11)  Plaintiff observes that "Dr. Keshavarzi admitted "the discussion of headaches in his report [was based

24

upon] what he read in plaintiff's treaters' reports." (<u>Id.</u>) He also notes that Dr. Keshavarzi's testified during the deposition that "his opinions related to neck and back pain are '100 percent' based on the documentation (the treaters' reports) given to him." (<u>Id.</u> at 12) Likewise, Dr. Keshavarzi indicated his statements in the report were based upon the records provided, and he declined to opine whether Plaintiff continues to suffer from numbness and tingling, "let alone whether it was caused by [the] collision." (<u>Id.</u>) Therefore, Plaintiff requests that "the Court exclude any testimony of defendant's expert relating to his opinions on plaintiff's headaches, back pain, neck pain, and numbness and tingling." (<u>Id.</u>)

Significantly, as Defendant argues, "Federal Rule of Evidence 703 allows an expert to "base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed." (Doc. 44 at 7, emphasis added) The Ninth Circuit determined an expert's testimony on causation was admissible when it was based only upon his review of medical records, clinical studies, and the expert's experience. <u>See</u> <u>Hopkins v. Dow Corning Corp.</u>, 33 F.3d 1116, 1125 (9th Cir.1994); see also <u>Kennedy v. Collagen Corp.</u>, 161 F.3d 1226, 1228 (9th Cir. 1998) (finding the expert used "methods reasonably relied on by experts in their field" where the methods included reviewing clinical studies; the plaintiff' medical records, including medical records pertaining to plaintiff's health prior to the exposure in issue; and the plaintiff's diagnostic tests or laboratory results). Thus, the Ninth Circuit determined an experts' review of an individual's medical records and the findings therein is an appropriate method that satisfies the requirements of Rule 702 and <u>Daubert</u>.

Moreover, Plaintiff fails to identify any opinions in Dr. Keshavarzi's report related to Plaintiff's headaches, back pain, neck pain, numbness, and tingling that are purely speculative in nature and not based upon his review of the medical record. Consequently, Plaintiff fails to show the testimony is not reliable.

### C. Conclusion

The Court finds the method used by Dr. Keshavarzi to reach his conclusions was proper, and his opinions are "based on sufficient facts or data." Further, his knowledge and opinions will assist the jury to understand the medical evidence related to the issues of causation and damages. As such, the opinions of Dr. Keshavarzi should be admitted. <u>See</u> Fed.R.Evid. 702; <u>Hopkins</u>, 33 F.3d at 1125.

Plaintiff's motion to exclude opinions of Dr. Keshavarzi is **DENIED**.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1.      The defendant's motion in limine number 1 (Doc. 35) as to Ms. Porter was withdrawn and the motion as to Mr. Moorehead is **DENIED**. The plaintiff SHALL provide contact information for Mr. Moorehead by December 13, 2018;

2.      The defendant's motion in limine number 2 (Doc 36) is **GRANTED;**

3.      The defendant's motion in limine number 3 (Doc. 37) is **GRANTED;**

4.      The defendant's motion in limine number 4 (Doc. 38) is **GRANTED in PART** and **DENIED in PART** as stated above;

5.      The defendant's motion in limine number 5 (Doc. 39) is **GRANTED in PART** and **RESERVED in PART** as stated above;

6.      The defendant's motion in limine number 6 (Doc. 40) is **GRANTED in PART** and **RESERVED in PART** as stated above;

7.      The defendant's motion in limine number 7 (Doc. 41) is **DENIED** as stated above;

8.      The defendant's motion in limine number 1 (Doc. 43 at 3)is **DENIED**;

9.      The defendant's motion in limine number 2 (Doc. 43 at 4) is **DENIED** as stated above;

10.     The defendant's motion in limine number 3 (Doc. 43 at 6) is **GRANTED**;

11.     The defendant's motion in limine number 4 (Doc. 43 at 8) is **GRANTED** as stated above;

12.     The defendant's motion in limine number 5 (Doc. 43 at 10) is **DENIED**.


IT IS SO ORDERED.

Dated:   **December 14, 2018**            **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE